UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JACOB K.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

20-CV-825-LJV
DECISION & ORDER

---

On July 2, 2020, the plaintiff, Jacob K. ("Jacob"), brought this action under the Social Security Act.  He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.  Docket Item 1.  On January 25, 2021, Jacob moved for judgment on the pleadings, Docket Item 9; on March 30, 2021, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 10; and on April 20, 2021, Jacob replied, Docket Item 12.

For the reasons stated below, this Court grants Jacob's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and will refer only to the facts necessary to explain its decision.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Jacob argues that the ALJ erred in three ways.  Docket Item 9-1.  First, he argues that "the ALJ did not clearly apply the correct legal standard in evaluating the opinion evidence." *Id.* at 13.  Second, he argues that the ALJ "improperly evaluated"

2

the opinion of his treating psychologist, Kathryn J. Sanborn, Ph.D.  *Id.* at 13-18.  And third, he argues that the ALJ "failed to reconcile" the opinions of Gregory Fabiano, Ph.D., and A. Dipeolu, Ph.D., with the residual functional capacity ("RFC").[3]  *Id.* at 18-24.

This Court agrees that the ALJ erred for the third reason and, because that error was to Jacob's prejudice, remands the matter to the Commissioner.[4]

I.  DR. FABIANO'S AND DR. DIPEOLU'S OPINIONS

"Under the Commissioner's own rules, if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted.'"  *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (quoting SSR 96-8p, 1996 WL 374184, at *7).  An "ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,'" *id.* (quoting *Gecevic v. Sec'y of Heath & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995)), and "[t]here is no absolute bar to crediting only portions of medical source opinions," *Younes v. Colvin*,

---

[3] A claimant's RFC "is the most [he] can still do despite [his] limitations," 20 C.F.R. § 416.945, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8P, 1996 WL 374184, at *2 (July 2, 1996)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

[4] Jacob's other arguments lack merit.  The ALJ used the correct standard to evaluate the opinion evidence.  *See* Docket Item 6 at 26-27 (assigning the medical opinions "persuasive weight" and "some weight"); 20 C.F.R. § 416.927 (requiring an ALJ to "weigh" the medical opinion evidence).  Moreover, although the ALJ discounted Dr. Sanborn's opinion without explicitly discussing the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008), that error was harmless because there were "good reasons" for discounting that opinion.  *See Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion").

2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015).  But when an ALJ "chooses to adopt only portions of a medical opinion[, the ALJ] must explain . . . [his] decision to reject the remaining portions."  *Raymer v. Colvin*, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (citing *Younes*, 2015 WL 1524417, at *8).

Moreover, if an ALJ rejects an opinion or part of an opinion about a particular limitation, the ALJ must base that decision on other medical evidence and may not replace the medical opinion with the ALJ's lay judgment.  *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a certain level of] work, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for [a] competent medical opinion.  While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." (citation and original alterations omitted)).

Here, Dr. Fabiano found that Jacob had "a mild to moderate limitation in the ability to interact adequately with supervisors, coworkers, and the public[;] . . . sustain concentration and perform a task at a consistent pace[;] and sustain an ordinary routine and regular attendance at work."  Docket Item 6 at 526.  Similarly, Dr. Dipeolu found that Jacob was "[m]oderately limited" in his ability "to ask simple questions or request assistance"; "to accept instructions and respond appropriately to criticism from supervisors"; and "to get along with coworkers or peers without distracting them or exhibiting behavioral extremes."  *Id.* at 83.  The ALJ afforded both opinions "persuasive weight" because they were "substantiated by the record," which showed that Jacob's

4

"impairments c[ould] produce difficulties with social interactions, understanding instructions, remaining focused, and managing stress." *Id.* at 26-27.

The ALJ then found that Jacob had the RFC to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to work involving no more than simple, routine tasks; is limited to work involving no more than occasional, nontransactional interaction with coworkers and the public; is limited to low-stress work, defined as having infrequent workplace changes that are gradually introduced; and is limited to work without production-paced requirements.

*Id.* at 24. Jacob argues that the ALJ erred in affording Dr. Fabiano's and Dr. Dipeolu's opinions persuasive weight but then formulating an RFC that did not incorporate their findings that Jacob was limited in his ability to interact with supervisors, work at a consistent pace, and maintain attendance and a routine. *See* Docket Item 9-1 at 22-23.

"The ability to maintain a regular schedule falls under the category of concentration and persistence." *Lowry v. Comm'r of Soc. Sec.*, 2017 WL 1290685, at *4 (N.D.N.Y. Mar. 16, 2017), *report and recommendation adopted by* 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017). And "[t]here is significant case law indicating that [an] ALJ's limit[ing a p]laintiff to 'simple, routine tasks' . . . accounts for [his] limitations for performing activities within a schedule and maintaining regular attendance." *Shannon v. Berryhill*, 2018 WL 6592181, at *3 (W.D.N.Y. Dec. 13, 2018) (collecting cases); *see also Burguess v. Berryhill*, 2018 WL 3569933, at *3 (W.D.N.Y. July 25, 2018) (finding that the plaintiff's "no more than 'moderate'" limitations in "attention and attendance" were accommodated by an RFC of "simple, routine work").

The RFC here limited Jacob to "simple, routine tasks" and "work without production-paced requirements." Docket Item 6 at 24. That sufficiently accounted for

5

Dr. Fabiano's and Dr. Dipeolu's attendance and pace limitations.  *See Landers v. Colvin*, 2016 WL 1211283, at *4 (W.D.N.Y. Mar. 29, 2016) ("The [ALJ's] determination that [the p]laintiff [was] limited to 'simple, repetitive, and routine tasks' account[ed] for [the p]laintiff's limitations as to maintaining attention and concentration, performing activities within a schedule, and maintaining regular attendance.").  Because the RFC incorporated the pace and attendance limitations, the ALJ was not required to "explain his decision to reject" them, as Jacob suggests.  *See* Docket Item 9-1 at 22.

This Court agrees with Jacob, however, that the RFC does not incorporate or otherwise address Dr. Fabiano's and Dr. Dipeolu's opinions that Jacob was limited in his ability to interact with supervisors.  "The public, supervisors, and co-workers are distinct groups."  *Nickens v. Colvin*, 2014 WL 4792197, at *2 (W.D. Pa. Sept. 23, 2014).  "Thus, limitations on two of these types of interactions in the RFC does not account for limitations on the third."  *Id.*; *see also Smith v. Colvin*, 2017 WL 489701, at *3 (W.D.N.Y. Feb. 7, 2017) ("a limitation in interacting with the public is not equivalent to a limitation interacting with coworkers or supervisors").  For that reason, the RFC's limiting Jacob's "interaction with *coworkers and the public*," Docket Item 6 at 24 (emphasis added), does not account for Dr. Fabiano's finding that Jacob was mild to moderately limited "in the ability to interact adequately with *supervisors*," *id.* at 526 (emphasis added), or Dr. Dipeolu's finding that Jacob was moderately limited in "accept[ing] instructions and respond[ing] appropriately to criticism from *supervisors*," *id.* at 83 (emphasis added).

Although the ALJ was not required to accept everything about which Dr. Fabiano or Dr. Dipeolu opined, *see Younes*, 2015 WL 1524417, at *8, he was required to explain what parts of their opinions he rejected and why, *see Raymer*, 2015 WL 5032669, at *5.

Because the ALJ did not provide any reason for omitting the supervisor limitation, this Court has no idea whether the ALJ missed it, ignored it, or disagreed with it for some legitimate reason. And so the failure to address that limitation was error.

Omitting any reference to the supervisor limitation is particularly troubling in light of the ALJ's specific reference to Jacob's issues with authority figures. As the Commissioner's brief itself notes, "the ALJ acknowledged [Jacob's] difficulty in getting along with authority figures who did not understand his impairments" as well as Jacob's "allegations that he tended to aggravate people with [asking] questions." Docket Item 10-1 at 11. Given that acknowledgement, it was incumbent on the ALJ to address Jacob's issues with supervisors in the RFC or at least to explain why he did not.

"When the plaintiff's impairment is a mental one, special 'care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, *e.g.*[,] speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work.'" *Welch v. Chater*, 923 F. Supp. 17, 20 (W.D.N.Y. 1996) (quoting SSR 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Here, the ALJ did not ask about, and the vocational expert ("VE") did not address, whether the jobs that the VE identified could be performed by someone who was limited in interacting with supervisors. *See* Docket Item 6 at 65-72. For that reason, the ALJ's error was not harmless. *See Labonte v. Berryhill*, 2017 WL 1546477, at *4 (W.D.N.Y. May 1, 2017) (remanding where the ALJ gave "significant weight" to the opinion of the claimant's chiropractor but "reject[ed]—without any explanation whatsoever—[the chiropractor's] opinion that she would frequently be off task").

On remand, the ALJ must either explain why he does not credit Dr. Fabiano's or Dr. Dipeolu's findings that Jacob is limited in his ability to interact with supervisors, or he must incorporate that limitation into the RFC.

## II. STRESS LIMITATION

"Because stress is 'highly individualized,'" an ALJ must "make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work." *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 188-89 (W.D.N.Y. 2006) (citing SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985) (explaining that "[b]ecause response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job . . . [and a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment")); *see also Welch*, 923 F. Supp. at 21 ("Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments.").

What is more, a generalized limitation of "low-stress work" in a claimant's RFC does not ensure a reviewing court that the required individualized inquiry was undertaken. *See Haymond v. Colvin*, 2014 WL 2048172, at *9 (W.D.N.Y. May 19, 2014) (finding that the RFC's "restricting [the p]laintiff to unskilled work in a 'low stress, low contact' environment[] did not adequately take into account the functional limitations caused by her various severe mental impairments on her ability to deal with everyday stressors"). As the Commissioner's own regulations explain:

> A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job. [F]or example, a busboy need only

8

>clear dishes from tables. But an individual with a severe mental disorder may find unmanageable the demands of making sure that he removes all the dishes, does not drop them, and gets the table cleared promptly for the waiter or waitress. Similarly, an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the *knowledge* that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons.

SSR 85-15, 1985 WL 56857, at *6 (emphasis in original). So when stress affects a claimant's ability to function, the ALJ must address any limitations explicitly and uniquely for that claimant. *Stadler*, 464 F. Supp. 2d at 189.

The ALJ found that Jacob's "impairments c[ould] produce difficulties . . . managing stress," Docket Item 6 at 26, and he therefore limited Jacob to "low-stress work, defined as having infrequent workplace changes that are gradually introduced," *id.* at 24. But the ALJ did not make specific findings about the "nature of [Jacob's] stress, the circumstances that trigger it, and how those factors affect his ability to work." *See Stadler*, 464 F. Supp. 2d at 189.

The failure to address Jacob's stress leaves significant gaps in the ALJ's decision and raises questions about whether Jacob could perform the jobs that the ALJ found him able to perform. For example, because the ALJ did not make specific findings about what triggers Jacob's stress, this Court does not know whether the RFC's limiting Jacob to a job with "infrequent workplace changes that are gradually introduced," Docket Item 6 at 24, would sufficiently accommodate his stress. Moreover, the VE did not address the mental demands of the jobs that he identified, how stressful those jobs are, or how Jacob's specific stress triggers might affect the performance of those jobs. *See* Docket Item 6 at 65-72.

9

The ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that ' . . . a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (third alteration in original) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). Because the ALJ failed to make specific findings about Jacob's stress, that bridge is missing here. *See Welch*, 923 F. Supp. at 20-21 ("Even if this Court were to accept the ALJ's general conclusion that [the] plaintiff has the residual functional capacity to perform simple, low-stress work, this Court is still unable to determine whether she can perform her past relevant job as a cleaner without any knowledge regarding the demands of that job. Here, the ALJ needed to probe into the stress level of [the] plaintiff's past relevant work as a cleaner in order to determine if, in fact, she currently is capable of performing that job.") (citation omitted)). That is a second, independent error requiring remand. *See Booker v. Colvin*, 2015 WL 4603958, at *3 (July 30, 2015) (remanding where the ALJ limited the claimant to a "low-stress" environment without making "specific findings concerning the nature of [the claimant's] stress, the circumstances that trigger it, and how those factors affect his ability to work").

On remand, the ALJ must explicitly consider how Jacob's stress tolerance could affect his RFC as well as how stress might affect Jacob's ability to perform the specific job or jobs that otherwise fit his RFC profile.

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 10, is DENIED, and Jacob's motion for judgment on the pleadings, Docket Item 9, is

GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

    SO ORDERED.

Dated:      September 23, 2021
                Buffalo, New York


                                              */s/ Lawrence J. Vilardo*
                                              LAWRENCE J. VILARDO
                                              UNITED STATES DISTRICT JUDGE